IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 18-cr-10036-JES |
| | ) |
| KENTREVION WATKINS, *et al.*, | ) |
| | ) |
| Defendants. | ) |

**OPINION AND ORDER**

Defendants filed a direct appeal in this case arguing, *inter alia*, that the Court ran afoul of *Batson v. Kentucky*, 476 U.S. 79 (1986) during jury selection. The Seventh Circuit agreed with Defendants, finding that this Court incorrectly employed the three-step *Batson* process. The Seventh Circuit specifically noted that this Court utilized an inappropriately heightened standard as to the first step, *see United States v. Watkins*, 107 F.4th 607, 620-21 (7th Cir. 2024), while also concluding that this Court's credibility determination was too vague. *Id.* at 621. The Seventh Circuit remanded the case "for the limited purpose of correctly employing the three-step process under *Batson* to evaluate the merits of the defendants' objections to the government's use of its peremptory challenges as to Juror 26 and Juror 58." *Id.*

On July 24, 2024, this Court held a status conference with the Parties to determine the best way to proceed in light of the remand, and the Court ordered the Parties to submit briefing on the *Batson* issue. *See* Minute Entry Dated July 24, 2024. Subsequently, the Government filed its position statement (Doc. 1314), supported by several sealed exhibits. Doc. 1316. Defendants then filed their position statement. Doc. 1317. The Government replied (Doc. 1318), and the Defendants

filed a motion to file a sur-reply to provide recent, supplemental authority. Doc. 1319. Leave is GRANTED as the Court considered the sur-reply in this Order.

## BACKGROUND

The history of this case was thoroughly summarized in the Seventh Circuit's opinion, *see Watkins*, 107 F.4th at 616-620; *see also* Doc. 1312 (Mandate), so this Court need not belabor it. However, when necessary, the Court shall discuss additional facts and procedural history, including any additional background relevant to *voir dire* and jurors 26 and 58.

### I.     SCOPE OF REMAND

Before correctly employing the three-step process under *Batson*, this Court must determine the scope of the Seventh Circuit's remand, as the Parties disagree on this issue. The Seventh Circuit issued a limited remand pursuant to *United States v. Paladino*, 401 F.3d 471, 484 (7th Cir. 2005). This means that the Seventh Circuit has retained jurisdiction over the case, *see United States v. Duncan*, No. 22-1155, 2022 WL 4008717, at *1 (7th Cir. Sept. 2, 2022), and the Court is to fulfill the Seventh Circuit's express directive, to correctly employ the *Batson* framework. *See United States v. Adams*, 746 F.3d 734, 743-45 (7th Cir. 2014). Notably, "[w]hether a particular issue is within or outside the scope of remand is 'determined not by formula, but through careful examination of the prior appellate proceedings, including: the issues presented, the remand instructions, the express holdings, the procedural posture, and the issues that were necessarily resolved either by implication or waiver." *Bradley v. Vill. of Univ. Park., Ill.*, 59 F.4th 887, 896 (7th Cir. 2023) (citations omitted).

The Government asserts that this Court must go through all three steps of the *Batson* framework: evaluating whether the Defendants have made a *prima facie* case as to an inference of racial discrimination; whether the Government proffered race-neutral reasons for the strikes; and

whether, under the totality of the circumstances, the Government's proffered reasons are credible. Defendants disagree that all three steps are to be considered, asserting that the Seventh Circuit's remand limits this Court to a step three credibility analysis. Despite this, Defendants have briefed all three steps as applied to Jurors 26 and 58.

In support of its argument that the Court may only conduct a step three credibility analysis, Defendants point to language in *Watkins* that they believe casts doubt on the ability of this Court to consider steps one and two. Defendants reference the Seventh Circuit's step one finding that this Court applied too high a standard in determining whether Defendants had established a step one *prima facie* case of discrimination. There, the Court concluded that step one was not met because Defendants failed to prove discrimination, or otherwise show a pattern of discrimination. In its Order, the Seventh Circuit noted that one need not allege a pattern of discriminatory challenges to sustain a *Batson* challenge. However, contrary to Defendants' position, the Seventh Circuit did not affirmatively state that Defendants have met their step one burden. Rather, the remand order specifically requires this Court to "evaluate the merits of the defendants' objections to the government's use of its peremptory challenges as to Juror 26 and Juror 58." *Watkins*, 107 F.4th at 621. As a result, the Court does not find that the Seventh Circuit resolved the step one *Batson* analysis in Defendants' favor, something that would preclude the Court from considering it. Rather, it reads the remand as ordering a full *Batson* analysis.

As to the step two inquiry, Defendants argue that the Seventh Circuit found the Government had effectively proffered a race-neutral explanation as to Juror 26, but not as to Juror 58. The Seventh Circuit stated that "[a]s for Juror 58, the government steadfastly declined to offer any explanation, despite persistent prompting by the court. It tries to do so now, but, having forfeited its opportunity below, the government has relinquished its right to supply its reasons on

appeal." *Watkins*, 107 F.4th at 621 (citing *United States v. Gimbel*, 782 F.2d 89, 91 (7th Cir. 1986)). Defendants argue this precludes the Court from considering the government's race-neutral reasons for striking Juror 58. The Government responds that this passage merely reiterates the well-worn principle that a court of appeals does not create the record and it is this lower court's duty to do so on remand.

The Court agrees that the Seventh Circuit's opinion does not prevent it from considering the prosecution's race-neutral reasons for striking Juror 58. It would be an exceedingly perverse outcome if this Court's mistake of law prejudicially prevented the Government proffering its reasons for striking Juror 58. As noted, the Court applied an unduly high standard when it found that Defendants had failed to make a prima facie showing. Where a prima facie case is not made, the party whose strikes are challenged need not offer anything further. *See United States v. Lovies*, 16 F.4th 493, 501 (7th Cir. 2021) ("[w]hen faced with a *Batson* challenge, a district court should first consider whether the challenger has presented evidence that is sufficient to permit an inference of racial discrimination. ***If the court concludes the challenger has not presented such evidence, the Batson challenge should be rejected at step one***." (emphasis added). Here, the Court rejected the challenge at step one and so the Government had no need to provide a step two explanation. Thus, this Court does not interpret the Seventh Circuit as now prohibiting the Government offering reasons in support of step two.

Furthermore, preventing the Government from proffering those reasons would be highly illogical given the Seventh Circuit's emphasis that this Court reach step three. If that were the Seventh Circuit's intent, the Government would not be allowed to state its race-neutral reasons, and the Defendants would certainly prevail at step three. *See Johnson v. California*, 545 U.S. 162, 171 n.6 (2005) (stating that the failure to offer a step two explanation is "additional support for the

4

inference of discrimination."). If Defendants were found to prevail at step one, and the Government was not given an opportunity to provide race-neutral reasons at step two, the result would be a foregone conclusion. This would be contrary to caselaw which provides that when a trial court fails to elicit the prosecution's reasons for striking a juror, appellate courts will routinely remand so these reasons may be provided. *See, e.g.*, *Johnson v. Martin*, 3 F.4th 1210 (10th Cir. 2021).

Finally, the Court rejects Defendants' position that the recent opinion in *Carter v. City of Wauwatosa*, ___ F.4th ___, 2024 WL 3811650 (7th Cir. 2024), restricts an examination of step three. While *Carter* predominately dealt with the trial court's handling of step three, here the Seventh Circuit commented on all three steps. The ultimate language of the differing remand orders is telling. In *Carter*, the Seventh Circuit remanded "the case for the district judge to **properly complete** the three-step process under *Batson*." *Id.* at 7 (emphasis added). Whereas in *Watkins*, the Seventh Circuit remanded "this case to the district court for the limited purpose of **correctly employing** the three-step process under *Batson*…" 107 F.4th at 621 (emphasis added). The Seventh Circuit's use of the word "employing" in *Watkins* as opposed to "complet[ing]" in *Carter* leads this Court to believe that all three steps are in play here.

As discussed above, the Seventh Circuit's remand does not prohibit this Court's consideration of steps one and two. And, the Parties agree that the Seventh Circuit contemplated this Court's ruling on step three. Thus, this Court must conduct a *Batson* inquiry under the normal framework, beginning with the Defendants' burden under step one, moving to the Government's burden under step two, and wholistically evaluating the evidence and explanations under step three.

There remains a question as to whether the Court is appropriately positioned to resolve a *Batson* challenge on the briefs alone. The Government steadfastly argues that the Court should

conduct a hearing at which it can resolve the *Batson* challenge, and that under Federal Rule of Criminal Procedure 43, the Defendants must be present. Defendants counsel, despite indicating at the July 24, 2024, conference that they would brief the Court on why the Defendants presence under Rule 43 may be waived, has instead argued that no evidentiary hearing is necessary because this Court may not supplement the record. For the reasons discussed above, this Court must expand the evidentiary record, so Defendants' position falls flat. But still, the Court disagrees with the Government that an in-person evidentiary hearing in required. The Court has scoured various dockets from which the Seventh Circuit has remanded a *Batson* issue and finds the *Stephens* opinions illuminating.

In *United States v. Stephens*, 421 F.3d 503 (7th Cir. 2005), the Seventh Circuit remanded for district court proceedings as to the second and third steps of the *Batson* framework. On remand, the district court explicitly declined the defendant's request to conduct an evidentiary hearing, and instead relied on the parties' briefing. *United States v. Stephens*, MFK-02-661, 2006 WL 1663447, at *2 n.1 (N.D. Ill. June 9, 2006). Specifically, the district court stated that "Stephens sought an evidentiary hearing so that he could cross-examine the government regarding the actual reasons for its peremptory strikes. The government objected, arguing that Stephens had ample opportunity to review trial transcripts, audiotapes of jury selection, juror questionnaires, and the government's notes." *Id.* On remand, the district court determined that there was a *Batson* violation, ordering a new trial. *Stephens*, 2006 WL 1663447, at 10, 12. The Seventh Circuit reversed on appeal, concluding that the *Batson* challenge was ultimately without merit, implicitly endorsing the district court's decision to forego a *Batson* evidentiary hearing. *See United States v. Stephens*, 514 F.3d 703 (7th Cir. 2008).

6

Like *Stephens*, the Parties here have had ample access to the *voir dire* transcripts and the relevant juror questionnaire reports. Furthermore, like the prosecution team in *Stephens*, the Government's attorneys, Ronald L. Hanna, and Douglas F. McMeyer, were members of the original trial team and are signatories to the Government's position statement.[1] Attorneys Hanna and McMeyer "owe a duty of candor" to the Court. *Beam v. IPCO Corp.*, 838 F.2d 242, 249 (7th Cir. 1988). And, this Court does not have any basis to consider the Counsel's assertions as less than truthful. Thus, the Court takes as true the Government attorneys' assertions that they were involved with the decision to strike jurors 26 and 58, and that the reasons proffered in their position statement are the same they would have been presented during *voir dire* – if they had been obligated to present an explanation.

In further consideration of the scope of the remand, the Court notes that it may consider the three-step *Batson* framework in any order. *See Lovies*, 16 F.4th at 504 ("[A] district court need not pronounce its ruling on step one before the Batson inquiry proceeds to the next two steps."); *United States v. Elizondo*, 21 F.4th 453, 467 (7th Cir. 2021) ("[T]here is no rigid requirement that a trial judge declare on the record that step two has been satisfied before proceeding to step three."). And so, the Court appropriately rules on all three steps, despite concluding that Defendants still have not stated a *prima facie* case under *Batson* as to Juror 58.

## II. DISCUSSION

Having determined the scope of the Seventh Circuit's limited remand, the Court now must correctly apply the three-step process under *Batson* to evaluate the Government's preemptory challenge of jurors 26 and 58.

---

[1] The third member of the trial team, Assistant United States Attorney Adam W. Ghrist has since left civil service and is now in private practice. At the time of the trial, he served as the Government's spokesperson, but he did not arrive at decisions unilaterally.

### A. Step One

As noted, to assert a *Batson* challenge, "a defendant must make out a *prima facie* case of purposeful discrimination by showing that the totality of the relevant facts gives rise to an inference of discriminatory purpose. *Watkins*, 107 F.4th at 619 (citations and quotations omitted). "[A] defendant's burden at step one is light. He need only indicate circumstances raising a suspicion that discrimination occurred. Indeed, to satisfy his burden to establish a *prima facie* case under step one, a defendant is not required to prove purposeful discrimination, by a preponderance of the evidence or otherwise. *Id.* at 620 (citations and quotations omitted). And, "a consistent pattern of official racial discrimination is not a necessary predicate to a violation of the Equal Protection Clause. Depending on the circumstances, the use of a single discriminatory peremptory strike can be enough." *Id.* (citations and quotations omitted). However, a defendant cannot succeed at step one by merely pointing to a stricken juror's race – more is needed. *See United States v. McMath*, 559 F.3d 657, 664 (7th Cir. 2009). Finally, "[c]ourts considering *Batson* claims at the *prima facie* stage may consider apparent reasons for a strike," but only to the extent that "the strikes are so clearly attributable to that apparent, non-discriminatory reason that there is no longer any suspicion, or inference, of discrimination." *Brown v. Jones*, 978 F.3d 1029, 1035 (7th Cir. 2020) (citations and quotations omitted).

#### 1. Juror 26

The Parties do not dispute that Juror 26 is a black male, and that all Defendants in this case are black males. The Parties also do not dispute that Juror 26 was the only black venireman in the panel of 20 prospective jurors. Despite this concurrence, the Government argues that this Court was correct in the first instance, because the Defendants were required to do more than point to a prospective juror's race in satisfying their *prima facie* case. But Defendants did more than point

8

to Juror 26's race. Defendants also indicated that, given the racial composition of the Central District of Illinois, it may be that Juror 26 would be the only opportunity for a black man to be on the jury. This is sufficient for the Defendants to satisfy their light burden of showing an inference of discrimination under step one. *See Morse v. Hanks*, 172 F.3d 983, 985 (7th Cir. 1999) ("A *prima facie* case of purposeful discrimination can be established where the prosecution uses a peremptory challenge to strike the only black venireman in the panel.")

### 2. Juror 58

The Parties do not dispute that Juror 58 spoke with a Hispanic accent, had a Hispanic surname, worked as a Spanish and English as a Second Language teacher, and had a dark skin tone.[2] These facts, combined with Juror 58's intake questionnaire indicating that she self-identified as Hispanic, certainly indicate that Juror 58 is a Hispanic woman who was a member of a protected class. *See Hernandez v. New York*, 500 US. 352, 355 (1991) (acknowledging Latinos as a cognizable ethnic group under *Batson*).

However, Defendants' *prima facie* claim as to Juror 58 still must fail as they have essentially relied solely on Juror 58's race to sustain its challenge. *See Sullivan v. United States*, 877 F.3d 337, 341 (7th Cir. 2017). Defendants do not argue that the types of questions asked by the prosecution during *voir dire* raise an inference of discrimination. *See McCain v. Gramley*, 96 F.3d 288, 290 (7th Cir. 1996). Defendants do not argue that a disproportionate number of strikes, or a pattern of strikes, was used against prospective Hispanic jurors. *See Stephens*, 421 F.3d at 512. In sum, despite Defendants' low burden at step one, they have not raised "circumstances raising a suspicion that discrimination occurred," and have thus failed to satisfy step one as to Juror 58. *Franklin v. Sims*, 538 F.3d 661, 665 (7th Cir. 2008) (citation and quotation omitted).

---

[2] Juror 58's surname is irrelevant, as she took her husband's last name.

### B. Step Two

"[O]nce a defendant establishes a *prima facie* case of discrimination, the burden of production shifts to the government, and the prosecutor must articulate race-neutral reasons for the peremptory challenge in question." *Watkins*, 107 F.4th at 619 (citation omitted). "At the second step, nearly any race-neutral reason will suffice, even those that are arbitrary, irrational, or silly." *United States v. Rutledge*, 648 F.3d 555, 559 (7th Cir. 2011) (citing *Purkett v. Elem*, 514 U.S. 765, 768 (1995) (*per curiam*)). Even so, "the proffered reasons must be 'clear and reasonably specific' and 'related to the particular case.'" *Carter*, 2024 WL 3811650, at 4 (quoting *Coulter v. Gilmore*, 155 F.3d 912, 917 (7th Cir. 1998)). "At this stage, the district court should bear in mind that step two sets a low bar for the strike's proponent to clear." *Lovies*, 16 F.4th at 504 (citations omitted).

#### 1. Juror 26

The Government, relying on its prior statements during *voir dire*, asserts that it struck Juror 26 because "of (1) his political knowledge of Rachel Parker and potential political affiliation with her, (2) his work for the Peoria Housing Authority, (3) his prior arrest, and (4) his prior residence in an area in which incidents within this indictment are alleged to have occurred." Doc. 1314 at 12. This explanation is race-neutral and satisfies the Government's burden at step two.

#### 2. Juror 58

As noted, the Court has found that Defendants have not made a *Batson* step one prima facie case as to Juror 58. Generally, this would mean that the Court need not go on to consider steps two and three. *See Lovies*, 16 F.4th at 501. However, mindful of the Seventh Circuit's instructions, and out of an abundance of caution, the Court will review these additional steps as they pertain to Juror 58.

10

As previously noted, during *voir dire*, the Government declined to offer a race-neutral or other explanation for striking Juror 58. Now, the Government reveals that it struck Juror 58 because "she was a teacher at a school in an area with significant connections to the case," *id.* at 12, and therefore had "personal involvement with the area, and, potentially, individuals involved in and aware of the case in various capacities." *Id.* at 13. The Government was also concerned with Juror 58's "denial of knowledge of gang activity despite working for District 150 and in close proximity to such crimes." *Id.* To the extent Juror 58's denial led the Government to question her impartiality, such an intuitive assumption appropriately constitutes a race-neutral explanation. *Cf. United States v. Hinton*, 94 F.3d 396, 397 (7th Cir. 1996) ("The "science" of choosing jurors often depends on the intuitive senses of the attorneys, and the non-discriminatory exercise of that intuition has been long upheld by the courts."). Therefore, the Government's explanation for striking Juror 58 is race-neutral and satisfies step two.

### C. Step Three

If the Government proffers race-neutral reasons for striking a prospective juror, the trial Court must "consider the totality of the circumstances and determine whether the government's explanation is credible." *Watkins*, 107 F.4th at 619 (citation omitted). "Credibility can be measured by, among other factors, [counsel's] demeanor; by how reasonable, or how improbable, the explanations are; and by whether the proffered rationale has some basis in accepted trial strategy." *Morgan v. City of Chi.*, 822 F.3d 317, 336 (7th Cir. 2016) (quotation marks and citation omitted); *see also Stephens*, 514 F.3d at 711-12 (noting that courts may evaluate credibility by noting whether the step two reasons create a disparate impact, correspond to a valid challenge for cause, or are otherwise inconsistent). Importantly, "the third step of the *Batson* inquiry" requires courts to "assess the honesty—not the accuracy—of a proffered race-neutral explanation." *United States*

*v. Yarrington*, 640 F.3d 772, 779 (7th Cir. 2011) (citation and quotation marks omitted). As refined by the Seventh Circuit, step three requires the trial court to "determine whether the parties have satisfied their respective burdens of proving or rebutting purposeful racial discrimination." *Aki-Khuam v. Davis*, 339 F.3d 521, 526 (7th Cir. 2003). And, a district court must be mindful that "[t]he ultimate burden of persuasion regarding racial motivation rests with the opponent of the strike." *United States v. Hendrix*, 509 F.3d 362, 369 (7th Cir. 2007) (citation omitted).

### 1. Juror 26

Each of the Government's reasons for striking Juror 26 are credible.

First and foremost, Juror 26 displayed a lack of candor by failing to disclose his arrest on his juror questionnaire. This alone would be a basis to strike Juror 26 for cause, and forces the Court to question the veracity of his answers during *void dire*. *See, e.g.*, *United States v. Warner*, RRP-02-506, 2006 WL 2931903, at *8 (N.D. Ill. Oct. 13, 2006) ("In the case of Jurors Pavlick and Ezell, the omitted history of arrests or convictions was both substantial and suggestive of bias..."). Furthermore, it is unclear from the record as to the disposition of Juror 26's arrest, given that he indicated it was merely "resolved." This is not a case where a juror was clearly a victim of a wrongful arrest, and a criminal history can be a legitimate basis for striking a juror. *Cf. United States v. Evans*, 192 F.3d 698, 701 (7th Cir. 1999).

Still, Defendants assert pretext, pointing out that Juror 54 remained on the panel despite having a history of pleading guilty to shoplifting. These cases are distinguishable, however, as Juror 26 was arrested for a crime of violence as were the Defendants on trial. In contrast, Juror 54 was arrested for petty theft. Furthermore, while Juror 54 disclosed this history, Juror 26 omitted information of his arrest from the jury questionnaire, thus calling his veracity into question.

Accordingly, the Government's concern over Juror 26's prior arrest was a credible basis for striking him.

Second, the Government struck Juror 26 because he lived on the South Side of Peoria, and the record is clear that Peoria's South Side was home to key criminal events, some of which occurred while he was living in the area. Doc. 1314 at 15-16. Juror 26's familiarity with the area and potentially interested individuals is undoubtedly a credible reason for the Government's strike. The Defendants nonetheless argue that striking jurors from the South Side demonstrates pretext, due to the "black-white segregation in the Peoria area." Doc. 1317 at 20. This argument is unavailing as "*Batson* protects against intentional discrimination, not disparate impact." *United States v. Brown*, 809 F.3d 371, 376 (7th Cir. 2016) (citing *United States v. Cruse*, 805 F.3d 795, 806 (7th Cir. 2015)). Therefore, the Government's strike of Juror 26 due to his residency in the South Side of Peoria was legitimate and credible.[3]

Third, the record is clear that Juror 26 had previously interacted with and had a possible political affiliation with a prospective witness, Rachel Parker, "a victim of the Bomb Squad's February 2017 arson attacks on that home and business." Doc. 1314 at 18. Defendants argue that this explanation constitutes pretext as Juror 26 did not know Ms. Parker personally, and "[t]he only 'affiliation' between Ms. Parker and Juror 26 was that they are both Black." Doc. 1317 at 19. Defendants offer no case law to support that a prospective juror must know a witness well in order for a peremptory strike to be justified. Moreover, "[t]he relevant issue is whether, ***based on what the prosecution knew about a juror at the voir dire***, the reasons for striking the juror were race-neutral." *Williams v. Chrans*, 957 F.2d 487, 491 (7th Cir. 1992) (emphasis added). Here, the Government knew that Juror 26 recognized, and had some interaction and possible affiliation with

---

[3] Defendants also assert that Juror 168 is a proper comparator who was not stricken, but as discussed *infra* at n.5, this argument relies on an erroneous premise.

13

Ms. Parker that went beyond merely seeing her name in the local paper. This is a credible and legitimate basis for striking Juror 26. *See United States v. Sandoval*, 241 F.3d 549, 552 (7th Cir.2001) (holding district court did not abuse its discretion in removing a juror during trial who knew a witness).

Finally, the Government was within its discretion to strike Juror 26 due to his work at the Peoria Housing Authority ("PHA"), as the PHA controlled the Harrison Homes public housing project, a project which was a locus of the Bomb Squad's criminal activity. Indeed, some Bomb Squad members "got Harrison Homes tattoos, made Harrison Homes gang signs, and used Harrison Homes handshakes to demonstrate their gang allegiance." Doc. 1314 at 17. Defendants argue that this explanation is pretext, as Juror 26 only worked for the PHA for six months and had not worked at the PHA during the time the relevant incidents occurred. Doc. 1317 at 19. The Court is not persuaded by Defendants' explanation, as it seems reasonable for the PHA's institutional knowledge to be passed on to new employees. And even if, as Defendants suggest, Juror 26 had not heard of Bomb Squad activity up to that point, it appears plausible that he may inadvertently learn of activity during the trial, or perhaps certain testimony would spark his recollection. And, if nothing else Juror 26 would almost certainly be aware of Harrison Homes gang activity by virtue of his employment with the PHA. Juror 26's employment with the PHA is thus a sufficient and credible basis for the Government to strike him. *Cf. Alverio v. Sam's Warhouse Club, Inc.*, 253 F.3d 933, 941 (7th Cir. 2001) ("We have approved the exclusion of potential jurors because of their professions…").

For the reasons stated above, each of the Government's reasons for striking Juror 26 are credible and independently sufficient to rebut Defendants' *Batson* challenge. Even more so, when taken together and considering the totality of the circumstances, there is insufficient evidence of

discriminatory intent in the striking of Juror 26. *Cf. Dunham v. Frank's Nursery & Crafts*, 967 F.2d 1121, 1126 (7th Cir.1992) ("The decision to challenge a juror will often rest on the interplay of various factors. Here, the multiple reasons given by Frank's constitute a sufficiently clear and specific race-neutral explanation for its challenge of Mrs. Mitchell.") Defendants' therefore fail to meet their ultimate burden in sustaining a *Batson* challenge as to Juror 26.

### 2. Juror 58

The Government's explanation for striking Juror 58 is credible for several reasons. First, the record is clear that Juror 58 worked at a school that was centrally located in an area crucial to the case, and so the Government's concern over her familiarity with the area and possibly with individuals involved in the case is not unfounded, despite the fact that she only worked at that school for two years prior. *Cf. United States v. Briscoe*, 896 F.2d 1476, 1488-89 (7th Cir. 1990) (expressing approval of prosecutor's strike of prospective juror who lived close to individuals involved in the case). Second, the Government struck Juror 154, a white venireperson, from the same panel.[4] Like Juror 58, Juror 154 was a teacher at a school in an area central to the case and may thus have been personally familiar with areas or persons relevant to the case. *Cf. United States v. Jones*, 56 F.4th 455, 479 (7th Cir. 2022) ("One way for defendants to satisfy their burden at *Batson* step three is to identify a similarly situated, non-African American juror to whom the government's proffered reason for striking [the African American juror] also applied but who was not struck.").[5]

---

[4] The fact that Juror 154 stated at *voir dire* that she might have personally been familiar with people or locations in this case, whereas Juror 58 did not, does not concern the Court. The core similarities between jurors 154 and 58, *i.e.*, teachers in a relevant geographic area, were the bases for the Government's strikes. It is unalarming, and quite routine, that one prospective juror has more knowledge of pertinent information to the case than the next – no two jurors are identical. This does not sound of discrimination or pretext.

[5] Defendants contend that a white teacher, Juror 168, was selected as an alternate for the jury despite working for Peoria High School. However, the Government correctly notes that Defendants mistakenly indicated that Juror 168 worked for Peoria High. In fact, it was Juror 35 who worked at Peoria High School, and that juror was struck by

Finally, the Court had the opportunity to assess the prosecution team's demeanor during *voir dire* and throughout the trial, and although the Government stubbornly refused to explain its basis for striking Juror 58, the Court nonetheless finds that the Government attorneys were candid, without evidence of dishonesty. *Cf. United States v. Roberts*, 163 F.3d 998, 1000 (7th Cir. 1998) (explaining that district judges are well-situated "to evaluate the honesty of the lawyers who practice in district court"). Even so, this Court acknowledges that the Government's failure to provide a step two explanation as to Juror 58 at *voir dire* weighs against a finding of credibility. However, this failure is offset by the Government's reasonable explanation that a proffer of its reasons for striking Juror 58 would have required disclosure of its selection strategy during the first round of jury selection, and therefore allow Defendants "to leave prospective jurors that they might have otherwise removed through one of their peremptory challenges, knowing that those individuals would meet the government's race-neutral striking criteria." Doc. 1318 at 6. In light of the foregoing, the Government's explanation for striking Juror 58 is credible and without discriminatory intent. And so, the Defendants have failed to carry their burden of establishing discrimination for the purposes of sustaining their *Batson* challenge.

### III.    CONCLUSION

In light of the foregoing, the Court hereby arrives at the following holdings:

1. Defendants' request to file a sur-reply at 1319, is GRANTED;

2. Defendants stated a step one *prima facie* case under *Batson* as to Juror 26;

3. The Government sufficiently explained its step two race-neutral reasons under *Batson* for striking Juror 26;

---

the Defendants. Juror 168, to the contrary, worked as a teacher in Normal and Rantoul, and neither of those cities were centrally located to the criminal activity in this case.

4. On balance, the Government's reasons for striking Juror 26 are credible, and the Defendants failed to meet their ultimate burden of persuasion under *Batson* step three;

5. Defendants failed to state a step one *prima facie* case under *Batson* as to Juror 58;

6. Even if Defendants had stated a *prima facie* case as to Juror 58, the explanation offered by the Government for striking Juror 58 served to satisfy their burden of production under *Batson* step two;

7. The Court concludes that the Government's explanation for striking Juror 58 is credible, and that Defendants failed to meet their ultimate burden of persuasion under *Batson* step three;

8. Based on this Court's holdings, a new trial is unnecessary.

ENTERED this 10th day of September 2024.

s/James E. Shadid
JAMES E. SHADID
UNITED STATES DISTRICT JUDGE
